UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Y- C-,<br><br>        *Petitioner,*<br><br> – against –<br><br>KENNETH GENALO, *New York Field Office Director, Immigration and Customs Enforcement and Removal Operations (ICE/ERO)*, TODD LYONS, *Acting Director of Immigration Customs Enforcement (ICE)*, KRISTY NOEM, *Secretary of the Department of Homeland Security (DHS)*,<br><br>        *Respondents.* | **MEMORANDUM & ORDER**<br>25-cv-06558 (NCM) |

**NATASHA C. MERLE**, United States District Judge:

On October 6 or 7, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained petitioner Y- C- when he reported for a check-in appointment with ICE at 26 Federal Plaza in New York, NY. Pet. ¶ 2; Mem. of Law in Resp. to Order to Show Cause ("Resp.") 16, ECF No. 14.[1] Petitioner was then transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he is currently being detained. Pet. ¶ 8; Resp. 16. On November 25, 2025, petitioner sought a writ of habeas corpus from this Court under 28 U.S.C. § 2241. Pet. ¶¶ 4, 6. For the reasons stated below, the petition for a writ of habeas corpus is **GRANTED**.[2]

---

[1]   Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[2]   Although the habeas statute 28 U.S.C § 2243 contemplates a hearing, the Court concludes that the Petition "present[s] only issues of law" and can be appropriately

1

## BACKGROUND

Petitioner is a 43-year-old citizen of China who seeks protection in the United States after being persecuted by the Chinese authorities for his religious beliefs—specifically, for practicing Christianity. Pet. ¶¶ 1, 12, 29.³ Respondents are Kenneth Genalo, the New York Field Office Director for ICE, Todd Lyons, the Acting Director of U.S. Immigration and Customs Enforcement ("USCIS"), and Kristi Noem, the Secretary of the U.S. Department of Homeland Security ("DHS"). Pet. ¶¶ 13–15. All three individuals are legal custodians of petitioner. Pet. ¶¶ 13–15.

On or about February 17, 2024, petitioner came to or near the port of entry of Otay Mesa, California. Pet. ¶ 30; Charles Decl. ¶ 3. Respondents arrested petitioner and detained him, Pet. ¶ 30, and respondents assert that petitioner's apprehension took place within the United States, Charles Decl. ¶¶ 3–4. On or about the same day, petitioner was released from custody on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226(a). Pet. ¶ 30; Charles Decl. ¶ 5. Around the same time, respondents initiated removal proceedings against petitioner in New York by filing a Notice to Appear. Pet. ¶ 30; Charles Decl. ¶ 5. Respondents alleged that petitioner is subject to removal from the United States under 8 U.S.C. § 1182(a)(6)(A)(i) and commanded that petitioner appear for a hearing in the immigration court in New York, NY on March 5, 2025. Pet. ¶ 31; Charles

---

adjudicated without a hearing. *See* 28 U.S.C. § 2243 (requiring the Court to "summarily hear and determine the facts, and dispose of the matter as law and justice require"); *see also O.F.B. v. Maldonado*, No. 25-cv-06336, 2025 WL 3277677, *1 n.2 (E.D.N.Y. Nov. 25, 2025) (granting petition prior to hearing); *Tumba v. Francis*, No. 25-cv-08110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025) (same).

³    The Court's factual recitation relies on facts asserted in the Petition and a declaration submitted by respondents. *See* Pet; Decl. of Michael V. Charles ("Charles Decl."), ECF No. 14-1. The facts are undisputed unless otherwise noted. *See O.F.B.*, 2025 WL 3277677, *1 n.2.

Decl. ¶¶ 4–5. On April 22, 2025, petitioner filed an application for asylum with the Executive Office for Immigration Review ("EOIR"). Charles Decl. ¶ 7; *see also* Pet. ¶ 32. An individual merits hearing before an immigration judge on petitioner's asylum application is scheduled for December 17, 2025. Charles Decl. ¶ 10.

In compliance with petitioner's Order of Release on Recognizance, petitioner checked in with ICE on three occasions: electronically on March 6, 2024 and February 2, 2025, and in-person on October 6 or 7, 2025. Charles Decl. ¶ 11; Pet. ¶¶ 2, 32. On October 6 or 7, 2025, petitioner attended the in-person check in with ICE at 26 Federal Plaza in New York, NY. Pet. ¶¶ 2, 32; Charles Decl. ¶ 12. At that check in, "[r]espondents, without any stated reason, detained [p]etitioner . . . while he was dutifully reporting to ICE." Pet. ¶¶ 2, 32.[4] According to respondents, during the check-in, "[petitioner's] [Order of Release on Recognizance] was cancelled, he was detained pursuant to a Form I-200 Warrant for Arrest of Alien under DHS's authority at . . . 8 U.S.C. § 1225(b)(2)(A)[], and he was transferred to the Metropolitan Detention Center in Brooklyn, New York." Charles Decl. ¶ 12. Petitioner remains in custody at MDC. Pet. ¶ 8; Charles Decl. ¶ 13.

On November 25, 2025, petitioner filed a petition in the Eastern District of New York seeking a writ of habeas corpus under 28 U.S.C. § 2241. *See* Pet. On December 1, 2025, the petition was assigned to the undersigned. *See* Docket Entry dated December 1, 2025. The same day, the Court issued an order to preserve its jurisdiction enjoining respondents from moving petitioner to a location outside the Eastern District of New York, the Southern District of New York, or the District of New Jersey. Scheduling Order 2, ECF No. 8. The Court also directed respondents to show cause as to why the relief sought in the

---

[4]   Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

petition should not be granted. Scheduling Order 3. On December 10, 2025, respondents filed a response. *See* Resp. On December 16, 2025, petitioner filed a reply. *See* Reply in Opp'n ("Reply"), ECF No. 15.

## LEGAL STANDARD

Section 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under Section 2241, "[f]ederal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Rodriguez-Acurio v. Almodovar*, No. 25-cv-06065, 2025 WL 3314420, at *8 (E.D.N.Y. Nov. 28, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).

## DISCUSSION

This case is one of hundreds of recent cases presenting a similar fact pattern and core legal issue: a non-citizen at liberty in the United States pending the adjudication of his or her removal proceedings unexpectedly arrested and detained by ICE on the basis of a novel interpretation of the Immigration and Nationality Act ("INA"). As of November 26, 2025, "the central issue in this case — the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed — has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts." *Barco Mercado v. Francis*, No. 25-cv-06582, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). Within the Eastern District of New York, at least six judges have considered the issue in the last three

4

months and have unanimously rejected the government's interpretation. *See, e.g., Ye v. Maldonado*, No. 25-cv-06417, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Rodriguez-Acurio*, 2025 WL 3314420 (Choudhury, J.); *O.F.B.*, 2025 WL 3277677 (Gonzales, J.); *Sarmiento Guerrero v. Noem*, No. 25-cv-05881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025) (Komitee, J.); *J.U. v. Maldonado*, No. 25-cv-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025) (Merchant, J.); *Artiga v. Genalo*, No. 25-cv-05208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) (Morrison, J.). More broadly, throughout the Second Circuit, around two dozen district courts have considered the issue and all but two have sided with the view of the overwhelming majority of courts nationwide. *See Ye*, 2025 WL 3521298, at *2 n.7 (noting that only two decisions within the Second Circuit have agreed with the government's interpretation of the INA); *Barco Mercado*, 2025 WL 3295903, at *13 (listing seventeen pre-November 26, 2025 cases within the Second Circuit that ruled against the government). *But see Candido v. Bondi*, No. 25-cv-00867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) (upholding government's interpretation); *Chen v. Almodovar*, 25-cv-08350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) (same).

In the instant case, petitioner seeks a writ of habeas corpus based on several connected arguments. Petitioner contends that respondents lack statutory basis to detain him under the INA. Pet. ¶¶ 43–52. Moreover, petitioner maintains that his detention and potential transfer to another district violate his rights to due process under the Fifth Amendment to the United States Constitution. Pet. ¶¶ 37–42; 53–59. The Court addresses each argument below.

### I.     Statutory Basis for Petitioner's Detention

A core legal issue presented by the petition is which of two statutes governing immigration detention apply to petitioner: 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). The government argues that the former applies, Resp. 19–29, while petitioner argues that his detention is governed by the latter, Pet. ¶¶ 46, 56; Reply 3–4.

Section 1225 states in relevant part that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted[] shall be detained." 8 U.S.C. § 1225(b)(2)(A). Meanwhile, Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); 8 U.S.C. § 1226(a), (c). Detention under Section 1225 is mandatory except that the government may parole the noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Ye*, 2025 WL 3521298, at *3. Detention under Section 1226, by contrast, is discretionary, and a noncitizen who is detained may request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019); *see also O.F.B.*, 2025 WL 3277677, *3.

The government argues that "[p]etitioner falls within the ambit of § 1225(b)(2)'s mandatory detention requirement." Resp. 19. Section 1225(a) states that "an alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a). Petitioner is such "an 'applicant for admission' to the United States, because he is present in the United States without having been admitted." Resp. 19. The government's key argument, however, is that

6

because petitioner is "an applicant for admission" under Section 1225(a), he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Resp. 19–20.

This Court does not agree with respondents' reading of the INA. The Court finds persuasive the reasoning of the hundreds of district courts that have overwhelmingly rejected the government's interpretation of Section 1225. Three reasons underlie the Court's conclusion: the government's reading is (1) not consistent with the plain language of the statute, (2) in tension with precedent of the United States Supreme Court, and (3) impossible to square with a recently enacted portion of Section 1226. The Court discusses each reason in turn.

The Court begins with the plain text of the statute. The government's purported basis for petitioner's detention, Section 1225(b)(2)(A), states:

> Subject to subparagraphs (B) and (C), in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not *clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). Petitioner and respondents agree that petitioner is an "applicant for admission" to the United States. Resp 19; Reply 1. It is a separate question, however, whether petitioner is, despite already being physically present within the United States, someone "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). As respondents concede, many "courts have reasoned that, because aliens like . . . [p]etitioner here are present in the United States, they are no longer 'seeking admission' to the country and thus are no longer subject to § 1225(b)(2)(A)." Resp. 24; *see, e.g.*, *Ye*, 2025 WL 3521298, at *3–4; *O.F.B.*, 2025 WL 3277677, *3–5. The Court agrees with this straightforward reading.

7

Bolstering the Court's conclusion is the fact that the government's reading of Section 1225(b)(2)(A) would necessarily require that Congress used two different terms, "an alien who is an applicant for admission" and "an alien seeking admission," to mean the exact same thing within the same sentence. *Ye*, 2025 WL 3521298, at *4 (citing *Sarmiento Guerrero*, 2025 WL 3214787, at *3). This reading has at least two problems. For one, "in a given statute, different terms usually have different meanings." *Sarmiento Guerrero*, 2025 WL 3214787, at *3 (quoting *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)). Moreover, the wording of Section 1225(b)(2)(A) would be highly unnatural unless the terms had distinct meanings. If Congress had understood the terms to be synonyms, "Congress could have replaced 'an alien seeking admission' with 'the alien' or even 'he or she'—much clearer expression, with (ostensibly) no change in meaning." *Id.*

The government's interpretation is also in tension with the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). In that case, the Supreme Court considered whether certain detained noncitizens are entitled to periodic bond hearings. *Jennings*, 583 U.S. at 286. In the course of its analysis, the Court explained that "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 582 U.S. at 289; *see also Ye*, 2025 WL 3521298, at *5; *Sarmiento Guerrero*, 2025 WL 3214787, at *5. This dichotomy between the statutes and the noncitizens they apply to—"certain aliens seeking admission into the country" versus "certain aliens already in the country pending the outcome of removal proceedings"—aligns with the most plausible interpretation of the statutory text.

8

The government argues that, on the contrary, *Jennings* actually bolsters its position. The Court disagrees. The government quotes language where the Supreme Court stated that "[a]pplicants for admission fall into one of two categories, 'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" Resp. 12 (quoting *Jennings*, 582 U.S. at 287). The full text of the opinion, however, reveals that the Supreme Court was referring specifically to noncitizens being evaluated in the context of the "process of decision . . . at the Nation's borders and ports of entry." *Jennings*, 582 U.S. at 287. ("That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. . . . *As relevant here*, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." (emphasis added)). Other courts agree that this is the best reading of the Supreme Court's language. *See, e.g.*, *Ye*, 2025 WL 3521298, at *5; *Rodriguez-Acurio*, 2025 WL 3314420, at *24. The Court therefore concludes that this language is inapplicable to the detention at issue here, which did not occur during the "process of decision . . . at the Nation's borders and ports of entry," but rather after petitioner was released and residing within the United States for nearly two years.

Finally, the Court's interpretation of the inapplicability 1225(b)(2)(A) is bolstered by the fact that the government's reading is impossible to square with a recent provision of Section 1226. Earlier this year, Congress enacted and the President signed into law the Laken Riley Act. *See* Pub. L. 119-1, 139 Stat. 3 (2025). That law amended Section 1226 to "make[] noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain crimes." *Artiga*, 2025 WL 2829434, at *7 (citing 8

9

U.S.C. § 1226(c)); *see also Ye*, 2025 WL 3521298, at *4; *Tumba*, 2025 WL 3079014, at *4. If the government's reading of Section 1225 were correct, it would have made no sense for Congress to enact a special provision implementing mandatory detention for certain noncitizens meeting specific criminal criteria—mandatory detention would have already applied to each such noncitizen regardless of their criminal history. *Rodriguez-Acurio*, 2025 WL 3314420, at *23 (citing *Tumba*, 2025 WL 3079014, at *4); *see also Tumba*, 2025 WL 3079014, at *4 ("If Section 1225(b)(2) applied to noncitizens who are arrested on a warrant while residing in the United States, it would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous whenever the noncitizen is inadmissible under Sections 1182(a)(6)(A) or (a)(7). Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected." (quoting *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)).

Accordingly, this Court joins the growing chorus of courts in the "overwhelming, lopsided majority" to find that detention of the nature at issue here cannot be upheld under Section 1225(b)(2)(A). *Barco Mercado*, 2025 WL 3295903, at *4. Contrary to respondents' position, Section 1225(b)(2)(A) does not provide a valid basis on which to detain petitioner under these circumstances. Petitioner should not be subject to mandatory detention.

## II. Due Process

Petitioner also argues that his detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution. Pet. ¶¶ 37–42; 53–59. The Clause states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Clause "applies to all

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Ye*, 2025 WL 3521298, at *6; *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Complying with the Due Process Clause requires that "a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

At the outset, the government argues that the Due Process Clause does not apply to petitioner under the Supreme Court's precedents, including the so-called "entry fiction" doctrine. Resp. 17–18. The government asserts that "applicants for admission, like [p]etitioner, lack any constitutional due process rights with respect to admission aside from the rights provided by statute." Resp. 17 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.")). Furthermore, the government quotes *DHS v. Thuraissigiam*, which held that "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country. . . . [A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border . . . [and have] only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 139–40. (2020).

The Court holds that the entry fiction doctrine is currently inapplicable to petitioner and that the Due Process Clause governs his detention. The principal reason is that petitioner is neither currently stopped the border nor has he been paroled into the United States—rather, respondents released petitioner into the United States on his own

11

recognizance, Pet. ¶ 30; Charles Decl. ¶ 5, and petitioner thus enjoys due process rights as a "person[] within the United States," *Zadvydas*, 533 U.S. at 693. "[E]ntry fiction is a doctrine that dictates what constitutional rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *Ye*, 2025 WL 3521298, at *6 (quoting *J.G.O. v. Francis*, No. 25-cv-07233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025)). In *Mezei*, the noncitizen enjoyed no constitutional due process rights (only statutory due process rights) despite being physically present within the United States because his "extended departure from the United States required him to seek entry into this country once again" and when he was detained within the United States not having sought re-entry, "he was treated, for constitutional purposes, as if stopped at the border." *Zadvydas*, 533 U.S. at 693 (quoting *Mezei*, 345 U.S. at 213, 215); *see also Ye*, 2025 WL 3521298, at *6. Crucially, a noncitizen's release on his or her own recognizance isn't the same thing as "parole into the United States." *Ye*, 2025 WL 3521298, at *6. "Parole into the United States [under section 1182(d)(5)(A)] permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen as if stopped at the border." *J.G.O.*, 2025 WL 3040142, at *4 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)). Meanwhile, release on recognizance under § 1226(a)—another name for "conditional parole" under § 1226(a)—"instead releases a noncitizen already in the country from domestic detention." *Martinez*, 792 F. Supp. 3d at 215–216; *see also J.G.O.*, 2025 WL 3040142, at *4; *Ye*, 2025 WL 3521298, at *6. In this case, "petitioner was released on recognizance from domestic detention, not paroled, and then arrested inside the United States." *Ye*, 2025 WL 3521298, at *6. This is confirmed by the government's own declaration. Charles Decl. ¶ 5 ("He was then released pursuant to

an Order of Release on Recognizance (OREC) pursuant to INA §§ 236, 287 [8 U.S.C. § 1226(a)]." (bracketed text in original)). The Court concludes, as in *Ye*, that "petitioner was in this country when ICE agents arrested him without notice and transferred him to the MDC. He is therefore, like any other person in this country, entitled to due process." *Ye*, 2025 WL 3521298, at *6.

Given that the Due Process Clause applies to petitioner's detention, the Court turns next to whether the detention satisfies the three-part balancing test set out in *Mathews v. Eldridge*. *See Ye*, 2025 WL 3521298, at *6 (citing *Velasco Lopez*, 978 F.3d at 851). *Matthews* requires the Court to balance (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner alleges that "after initially releasing [him], [r]espondents have chosen to re-detain [him] in an arbitrary manner and not based on a rational and individualized determination of whether [he] is a safety or flight risk, in violation of due process." Pet. ¶ 57. The petition argues that "[h]ad [r]espondents conducted such an assessment, they would have concluded that no facts or circumstances had changed to justify a revocation of [p]etitioner's release on recognizance." Pet. ¶ 57. Respondents do not dispute that petitioner's detention violates the Due Process Clause, aside from their argument— rejected by this Court—that the Clause does not apply to petitioner. *See* Resp. 17–19.

The Court agrees with the other district courts that have found that the first two *Matthews* factor weighs heavily in petitioner's favor and the third factor does not weigh in

13

either direction. *See, e.g.*, *O.F.B.*, 2025 WL 3277677, at *6; *Ye*, 2025 WL 3521298, at *7. Regarding the first factor—petitioner's private interest—"the interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004); *see also Ye*, 2025 WL 3521298, at *7 (first citing *Artiga*, 2025 WL 2829434, at *8; and then citing *Velasco Lopez*, 978 F.3d at 851). This interest is even more sharply pronounced where an individual was released from detention on the condition that he comply with certain conditions (as petitioner was here), the individual in fact complies with those requirements (as petitioner did here), and the individual "thus relied on the government's implicit promise that his release will be revoked only if he fails to live up to those conditions." *Ye*, 2025 WL 3521298, at *7 (quoting *Savane v. Francis*, No. 25-cv-06666, 2025 WL 2774452, at *9 (S.D.N.Y. Sept. 28, 2025)); *see* Charles Decl. ¶ 11 ("[Petitioner] complied three times with the [Order of Release on Recognizance] by checking in electronically with ICE on March 6, 2024 and on February 2, 2025, and in person on October 6, 2025.").

Regarding the second factor—the value of additional safeguards—the Court finds that this factor also weighs heavily in petitioner's favor. Respondents released plaintiff under Section 1226(a). Pet. ¶ 30; Charles Decl. ¶ 5. Regulations implementing this statute authorize the government to grant release after making "an individualized determination as to whether detention is appropriate," *Rodriguez-Acurio*, 2025 WL 3314420, at *28, based on whether "the alien . . . demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding," 8 C.F.R. §§ 236.1(c)(8). "The noncitizen has an opportunity to appeal a detention decision by the DHS officer who conducted this individualized assessment to an immigration judge[,] who then conducts their own assessment of the

14

noncitizen['s] flight risk and dangerousness, among other factors." *Rodriguez-Acurio*, 2025 WL 3314420, at *28 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) (citing 8 C.F.R. § 1003.19(d))). The broad powers to detain noncitizens authorized by Section 1226(a) therefore come with corresponding procedural safeguards—particularly "the individualized custody determination that Section 1226(a) and its implementing regulations require." *Id*. Petitioner has a substantial interest in receiving additional procedural safeguards, including the process to which he was entitled under Section 1226(a) and its implementing regulations. This is starkly illustrated by the fact that respondents have provided absolutely no evidence or argument that petitioner's "release would . . . pose a danger to property or persons" or that petitioner is not "likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8); *see also Ye*, 2025 WL 3521298, at *7.

Finally, regarding the third factor—the government's interest—the Court concludes that this factor weighs in neither direction under the facts presented here. "The government's interest in detaining individuals under 8 U.S.C. § 1226(a) is valid if it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings [or] preventing danger to the community . . . , [but] the government does not [so] argue . . . nor could it do so on this record. The petitioner has no criminal history and has complied with the conditions of his release on recognizance, including appearing when the government directed him to do so." *Ye*, 2025 WL 3521298, at *8 (citing *Valdez v. Joyce*, No. 25-cv-04627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025)). The Court therefore concludes, consistent with the view of many other district courts in analogous cases, that "the "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to

15

respond violates his due process rights." *Ye*, 2025 WL 3521298, at *8 (quoting *Valdez*, 2025 WL 1707737, at *4).[5]

### III. Appropriate Remedy

To remedy petitioner's deprivation of due process, the Court holds that petitioner is entitled to immediate release from detention. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Ye*, 2025 WL 3521298, at *8 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody. . . . [It is] the most usual remedy by which a man is restored again to his liberty, if he [has] been against law deprived of it.")); *O.F.B.*, 2025 WL 3277677, at *8. The Court concludes that no relief short of petitioner's immediate release would be appropriate or sufficient in this case. *See Ye*, 2025 WL 3521298, at *8 ("[T]he government's failure to conduct any kind of individualized assessment before detaining him, failure to make any showing of changed circumstances, and failure to provide him with an opportunity to respond []renders any post-deprivation review by an immigration judge inadequate."); *see also Chipantiza-Sisalema*, 2025 WL 1927931, at *3 ("ICE summarily detained [petitioner] pursuant to an agency policy of

---

[5]     Because the Court held, *supra* Section II, that petitioner's detention was governed by Section 1226, the Court declines to reach the question of whether petitioner's detention would comply with due process were it in fact governed by Section 1225. *See, e.g.*, *Ye*, 2025 WL 3521298, at *8. Moreover, because the Court has concluded that that petitioner's detention itself violates the Due Process Clause, the Court declines to reach petitioner's theory that his "potential transfer . . . to another district" violates due process. *See* Pet. ¶ 42. Finally, because petitioner has brought his claims through the vehicle of a petition for a writ of habeas corpus under 28 U.S.C. § 2241, and because the Court has found it appropriate to grant the writ under the legal standard governing Section 2241 petitions, the Court declines to reach petitioner's arguments or respondents' counterarguments regarding the Administrative Procedure Act. Pet. ¶¶ 44–48; Resp. 31–32.

16

arbitrary detention without affording . . . notice or opportunity to be heard."). Accordingly, the Court deems petitioner entitled to immediate release.

## CONCLUSION

For the foregoing reasons, the Court holds that petitioner's detention violates the INA and the Due Process Clause. The petition for a writ of habeas corpus under 28 U.S.C. § 2241 is therefore **GRANTED**.

Respondents are directed to release the petitioner from custody within 24 hours of this Order. Respondents shall file a letter on the docket no later than 5:00 p.m. on December 18, 2025 certifying their compliance.

The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).

Should the petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

                                                   */s/ Natasha C. Merle*
                                                   NATASHA C. MERLE
                                                   United States District Judge

Dated:        December 17, 2025
                 Brooklyn, New York